UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| THE SMITHFIELD PACKING CO., INC., | ) | |
| | ) | Civil No. 11-282-GFVT |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ARMSTRONG INDUSTRIAL | ) | **&** |
| REFRIGERATION AND MAINTENANCE | ) | **ORDER** |
| SERVICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

Since the 1800s, meatpacking plants have used ammonia refrigeration systems to help store and preserve poultry.  As long as the ammonia is properly contained within the system it is a safe and highly efficient coolant.  Nevertheless, if not installed, maintained, and serviced properly, the inadvertent release of ammonia from these refrigeration systems can elicit serious health and environmental concerns.  Smithfield Packing Company, Inc., utilizes one of these systems at its Middlesboro, Kentucky plant, and in 2009, while undergoing renovations, a significant volume of ammonia was released in gas and liquid form.  The leak resulted in significant financial loss to Smithfield and unfortunate harm to the environment.

To make itself whole, Smithfield brought suit against Armstrong Industrial Refrigeration and Maintenance Service, Jones Refrigeration and Johnny Jones, and Precision Boiler Repair and Welding, Inc., whom it considers responsible for the release of ammonia at its plant.  Now, Precision Boiler seeks summary judgment on all claims asserted against it claiming that Smithfield has failed to produce expert testimony showing that it owed a duty of reasonable care.

For the reasons set forth below, Smithfield's claims will survive, and Precision Boiler's motion will be DENIED.

**I**

Once Smithfield Packing decided to expand its operations at the Middlesboro plant it contracted with Armstrong Refrigeration to provide labor, equipment, and materials for certain phases of the project. [*Id.*]  In turn, Armstrong Refrigeration subcontracted with Jones Refrigeration and Johnny Jones, and Precision Boiler to perform certain tasks related to the restructuring of the refrigeration system.

Jones was contracted to perform a "pump down" that would remove all of the existing liquid ammonia vapor from the pipes connected to the refrigeration system.  Precision Boiler's work involved removing a section of existing pipe connected to the system, while also installing a new pipe to connect the new areas of the plant to the existing refrigeration system.  Precision Boiler employees performed their work on the roof of the plant, and upon making a third cut into the existing pipe, ammonia vapor and liquid emerged in significant amounts.  Because of potential health concerns, the entire plant was evacuated, and Bell County Emergency Management and local firefighters arrived to inspect the premises.  After Emergency Management determined that no further action was necessary, Precision Boiler completed its work.

The following day, another ammonia leak occurred, and according to an investigation by Smithfield Packing, the release came from a valve in the newly installed segment of the pipe. Later that evening, Smithfield management was notified of fish deaths in nearby creaks downstream from the plant.  To mitigate the harm caused, Smithfield Packing incurred

significant cleanup expenses, and was additionally subjected to substantial civil penalties exacted by the Kentucky Energy and Environment Cabinet.

To remedy the financial harm it suffered, Smithfield Packing filed suit against Armstrong, Jones Refrigeration and Jones, and Precision Boiler claiming negligence, breach of contract, and breach of express and implied warranties.  Precision argues that it is entitled to summary judgment on all of Smithfield Packing's claims.

## II

## A

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'"  *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.  In reviewing a motion for summary judgment, the court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  *Browning v. Dept. of Army*, 436 F.3d 692, 695 (6th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 495 U.S. 574, 587 (1986)).

3

**B**

This is a diversity case, and thus the law of the forum state, Kentucky, governs. *Gahafer v. Ford Motor Co.*, 328 F.3d 859, 861 (6th Cir. 2003).  Negligence actions require establishing "(1) a duty on the part of the defendant; (2) a breach of that duty; and (3) consequent injury." *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992).  "The question of duty presents an issue of law," and should be resolved by the trial court. *Id.* at 248; *Murphy v. Second Street*, 48 S.W.3d 571, 573-74 (Ky.Ct.App. 2001).

Precision Boiler argues that whether it owed a duty to Smithfield Packing and whether it deviated from the applicable standard of care is an issue that demands expert testimony to assist the jury. [R. 96-1, at 2.]  Further, it asserts that expert testimony is needed to establish causation. [*Id.*]  Finally, it notes that Smithfield Packing has not proffered an expert to testify regarding any deviation from the standard of care, and hence, is unable to establish the elements of negligence entitling it to summary judgment. [*Id.* at 2, 5, 6.]

Smithfield Packing disputes the contention that Precision Boiler's duty can only be established by expert witness testimony.  According to Smithfield Packing, whether Precision Boiler had a duty of reasonable care is not beyond the common knowledge and common sense of potential jurors in this case.  Alternatively, Precision Boiler argues that it has properly disclosed expert opinion that sets forth Precision Boiler's legal duties.

In Kentucky, the question of "[w]hether expert testimony is required in a given case is squarely within the trial court's discretion." *Green v. Owensboro Medical Health System, Inc.*, 231 S.W.3d 781, 783 (Ky.Ct.App. 2007) (citing *Keene v. Commonwealth*, 516 S.W.2d 852, 855 (Ky. 1974)).  Unless an abuse of discretion is clear, Kentucky appellate courts will not intrude upon the trial court's ruling. *Id.* (citing *Baptist Healthcare Systems, Inc. v. Miller*, 177 S.W.3d

4

676, 680-81 (Ky. 2005)).  After reviewing the case law, the only context in Kentucky where expert testimony is consistently required is medical malpractice cases.  "Generally, medical malpractice cases require expert testimony to show that the defendant medical provider failed to conform to the required standard of care." *Blankenship v. Collier*, 302 S.W.3d 665, 670 (Ky. 2010); *Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992).  Even then, the Kentucky Supreme Court "has rendered numerous decisions in the medical negligence context in which expert witnesses were not required on the view that a lay juror was competent to analyze the conduct and render an appropriate verdict without the assistance of an expert witness." *Baptist Healthcare*, 177 S.W.3d at 681.

Oddly enough, Precision Boiler relies on a Tenth Circuit case, *Randolph v. Collectramatic, Inc.*, 590 F.2d 844 (10th Cir. 1979), to support its assertion that "[e]xpert testimony is required when the issue is outside the realm of common knowledge of laypersons." [R. 96-1, at 6.]  However, there is case law in Kentucky that establishes that principle.  In *Boland-Maloney Lumber Co., Inc. v. Burnett*, 302 S.W.3d 680 (Ky. Ct. App. 2009), the Boland-Maloney Lumber Company appealed a jury verdict finding it negligent for injuries sustained on a staircase by the plaintiff, Douglas Burnett. 302 S.W. 3d at 684.  Burnett and his brother owned a construction company that sub-contracted with Boland-Maloney to construct everything from the foundation to the roof of a 12,000 square-foot commercial office building. *Id.*  During an inspection of the building, Burnett injured himself while descending a stairway. *Id.* at 685.  During his testimony, Burnett explained that "as he began to place his foot where the next step would be after turning past a landing on the stairs, he felt as if he had 'stepped into a hole.' " *Id.*

On appeal, Boland-Maloney argued that Burnett was required to present expert testimony at trial to establish it had a duty. *Id.*  The Kentucky Court of Appeals first explained that because

5

the construction of the stairway required special skill and expertise, "the standard is typically measured by the standard of conduct customary in the profession under the circumstances." *Id.* at 686.  The court then opined that "[i]n such cases, expert testimony is typically required to establish the standard of care," but that there is an "exception in cases where the negligence of the professional is so apparent that even a layperson could recognize it." *Id.* (citing *Baptist Healthcare*, 177 S.W.3d at 681).  Based on these principles, the court determined "that the uniformity of stair risers on a stairway is an abundantly apparent standard, even among laypersons," and found itself unable to "say that the trial court abused its discretion in allowing the matter to proceed to the jury absent expert testimony on Boland-Maloney's duty." *Id.* at 686-87.

Based on the preceding case law, this Court finds that without the assistance of an expert Smithfield Packing has sufficiently established that Precision Boiler had a duty to use reasonable care in cutting the pipes.  *Boland-Maloney* instructs that where the standard of care is within the general or common knowledge of laypersons, an expert witness is not necessary to establish the standard. *Boland-Maloney*, 302 S.W.3d at 686.  Because ammonia is recognized as a highly toxic substance, Precision Boiler should have been aware of the high level of risk associated with cutting into the pipe, and thus should have realized it had a duty to use reasonable care to avoid releasing the toxin into the atmosphere. *See Lewis v. B&R Corporation*, 56 S.W.3d 432, 437 (Ky.Ct.App. 2001) ("[t]he scope of duty also includes a foreseeability component involving whether the risk of injury was reasonably foreseeable.").

This logic aptly applies to the causation issue as well.[1]  Under count one of its complaint, Smithfield Packing alleges that "Defendants . . . had a duty to use reasonable care in the performance of all work described in this Complaint, including but not limited to the above-described pump down and installation of the new pipe junction and shutoff valve." [R. 1-1, at 6.] As explained by Precision Boiler, it was at Smithfield Packing's plant to "remove a section of the existing pipe and install a new run of pipe to the new portion of the refrigeration system,"[*id.*], and that ammonia only began to spew from the pipe when its employees cut into it. [R. 96-1, at 3.]  Based on these facts, a reasonable juror could infer, without the testimony of an expert, that Precision Boiler did not use reasonable care in its pipe cutting duty and is in some capacity responsible for the injury to Smithfield Packing.

## C

Next, although Precision Boiler purports to be entitled to summary judgment against all claims asserted against it, it does not advance its expert argument against the breach of contract and breach of warranties claims.  Because Precision Boiler has failed to argue specifically how the absent of expert testimony results in summary judgment in its favor as to Counts Two and Three, those counts shall survive this motion too. *See Miller v. Burrows Paper Corp.*, 2007 WL 1098541, *2 (S.D. Ohio April 12, 2007) ("[b]ecause Defendant has failed to target specifically and present argument on these aspects of Count Five, then, this Court shall consider only those causes of action actually addressed in the motion.").

---

[1] On the subject of causation, Precision Boiler has failed to provide any case law establishing that expert testimony is necessary to show causation.  Except for the medical malpractice context, this Court has been unable to locate any such law either.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** that

Precision Boiler's Motion for Summary Judgment [R. 96] is **DENIED**.

This 27th day of February, 2013.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**